# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

**LAVIEENA CAMPBELL,**

    **Plaintiff,**

v.

**KEVIN L. MILLER,** in his capacity as Executive Director of the Ohio Rehabilitation Services Commission,

    **Defendant.**

Case No. 2:11-cv-381
JUDGE SMITH
Magistrate Judge Abel

## OPINION AND ORDER

Plaintiff Lavieena Campbell initiated this case on May 3, 2011, seeking declaratory and prospective injunctive relief against Defendant, Kevin Miller, in his capacity as Executive Director of the Ohio Rehabilitation Services Commission.[1] Plaintiff alleges that Defendant's refusal to grant a review by an impartial hearing officer of a decision by a state vocational rehabilitation official regarding the timeliness of her appeal, and Defendant's practice of summarily dismissing appeals violates the vocational rehabilitation provisions of Title I of the Rehabilitation Act of 1973, as amended 29 U.S.C. §§ 701-753 (hereinafter "Rehabilitation Act" or "the Act"), and her right to procedural due process as guaranteed by the Fourteenth Amendment's Due Process Clause. (Doc. 1, ¶ 6-7). This matter is before the Court on Defendant's Motion to Dismiss (Doc. 6) and Plaintiff's Motion for a Temporary Restraining Order and/or Preliminary Injunction (Doc. 8). For the following reasons, the Court **GRANTS** Defendant's Motion to Dismiss.

---

[1] "[A]n official capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).

# I. BACKGROUND

Plaintiff Lavieena Campbell has a disability and was found eligible to receive vocational rehabilitation services from the state vocational rehabilitation agency. (Doc. 1, ¶ 12). Campbell's disabilities affect her ability to work because she cannot perform physically demanding jobs and stress negatively impacts her concentration, memory, and interpersonal skills. (Doc. 1, ¶ 19). Plaintiff is also susceptible to anger as a result of her disabilities. *Id.*

The Rehabilitation Act empowers individuals with disabilities to maximize employment, economic self-sufficiency, independence, inclusion, and integration into society. *See Jackie S. v. Connelly*, 442 F. Supp. 2d 503, 507 (S.D. Ohio 2006) (citing 29 U.S.C. § 701). Congress created an interactive federal-state scheme whereby a state may receive federal funding for its vocational rehabilitation programs if it submits to the Commissioner of the Rehabilitation Services Administration a three-year plan that meets federal guidelines. *Id.,* citing § 721(a).

Ohio participates in this program and the Ohio Rehabilitation Services Commission ("ORSC") is the state unit designated to provide vocational rehabilitation services to people with disabilities pursuant to Sections 720-753 of Title I of the Act. *Jackie S.*, 442 F. Supp. 2d at 507. The Bureau of Vocational Rehabilitation ("BVR") is the division within the ORSC that provides rehabilitation services to individuals with disabilities other than blindness or other visual impairments. *Id.*

One of the thirty-six explicit requirements for state plans under Title I is an individualized plan of employment ("IPE"). *Id.,* citing 29 U.S.C. § 721(a)(9). An eligible individual and his vocational rehabilitation counselor must jointly develop and agree to an IPE and each IPE must be designed to achieve an individual's employment objective, long-term rehabilitation goals, and

intermediate rehabilitation objectives, "consistent with the unique strengths, resources, priorities, concerns, abilities, and capabilities of the individual." *Id.,* quoting §§ 722(b)(2)(E), (c)(5).

Plaintiff Campbell sought services from the ORSC and the BVR. (Doc. 1, ¶ 14, 16). On February 11, 2009, Campbell was found eligible for ORSC services. (Doc. 1, ¶ 18).[2] On July 23, 2009, Plaintiff signed an IPE. (Doc. 1, ¶ 20). Her IPE provided services for job development and placement, a job coach, and follow along services. (Doc. 1 ¶ 24). The Defendant has cooperative agreements with various agencies to provide rehabilitation services to eligible individuals, known as the Vocational Rehabilitation Public & Private Partnerships (VRP3). (Doc. 1, ¶ 15). Plaintiff had meetings with her VRP3 counselor and met routinely with her job developer to work on her search for a job. (Doc. 1, ¶ 26, 27). In July 2010, Campbell, her VRP3 counselor, and her job developer met to do an annual review and decided to continue her services. (Doc. 1, ¶ 31).

During the fall of 2010, Plaintiff felt frustrated and had a difficult time motivating herself. (Doc. 8, p. 4). On October 19, 2010, Plaintiff met again with her VRP3 counselor and job developer and vented her frustration about the job search. The VRP3 counselor told Plaintiff that she needed to increase the number of positions she was applying for, and it was agreed Plaintiff's resume would be revised. (Doc. 1, ¶¶ 36-37).

On November 23, 2010, Campbell met with David Bush, the vocational rehabilitation supervisor whom she had never met before, because her counselor was on leave.[3] (Doc. 8, p. 4). Campbell expressed dissatisfaction with the job development services she was receiving, and Bush told her that there were no alternative services that could be offered and that case closure

---

[2] In her complaint, Plaintiff refers to the "RSC."
[3] Plaintiff refers to meeting with a "VRP3" supervisor in her complaint. (Doc. 1, ¶¶ 38-39).

3

was the only alternative step. (Doc. 1, ¶¶ 40-41). Campbell left the meeting and her case was closed. (Doc. 1, ¶¶ 42-43).

Defendant argues that Mr. Bush informed Plaintiff that the ORSC would close her case at the November 23rd meeting. (Doc. 6, p. 2). Plaintiff left the meeting and ORSC closed her case immediately. (Doc. 6, p. 2). ORSC also argues that it sent a case closure certificate to Plaintiff on November 29, 2010, confirming in writing that her case had been closed. (Doc 6, p. 2).

Plaintiff claims that she learned about her case closure on January 3, 2011, when she went to the VRP3 office to inquire about her case. (Doc. 1, ¶¶ 45, 47). Plaintiff asserts that she had not received a copy of the Certificate of Closure before then. (Doc. 1, ¶ 49).

On January 6, 2011, Plaintiff requested an extension of time to file an appeal of her case closure with ORSC, and asserted that she did not learn of her case closure until January 3, 2011. (Doc. 6, p. 2).[4] ORSC rejected this appeal as untimely. (Doc. 6, p. 2). Both parties agree that Plaintiff had thirty days to file an appeal. Ohio Admin. Code § 3304-2-62; (Doc. 10, p. 1); (Doc. 6, p. 3).

Plaintiff brings this action to stop Defendant's practice of summarily dismissing requests for hearings seeking review of decisions made by state vocational rehabilitation officers. (Doc. 1, ¶ 5). Plaintiff also seeks a remedy for Defendant's refusal to grant review by an impartial hearing officer of a decision by a state vocational rehabilitation official regarding the timeliness of Plaintiff's appeal. (Doc. 1, ¶ 6). Plaintiff alleges the refusal and practice of summarily dismissing appeals violates the vocational rehabilitation provisions of Title I of the Rehabilitation Act of 1973 and her right to procedural due process as guaranteed by the Due Process Clause of the Fourteenth Amendment of the United States Constitution. (Doc. 1, ¶ 7).

---

[4] There is a minor discrepancy as to the date on which Plaintiff filed her appeal. Defendant asserts that the appeal was requested on January 7, 2011 (Doc. 6, p. 2). Both dates would be beyond the 30 day limit for appeals, however, and this difference is therefore immaterial.

4

# II. STANDARD OF REVIEW

Defendant moves to dismiss Plaintiff's claim under Federal Rule of Civil Procedure 12(b)(1) or (6). "We are bound to consider the 12(b)(1) motion first, since the Rule 12(b)(6) challenge becomes moot if this court lacks subject matter jurisdiction." *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990).

## A. Rule 12(b)(1) Standard

A Rule 12(b)(1) motion can attack a claim of jurisdiction on its face or it can attack the factual basis for jurisdiction. *DXL, Inc. v. Kentucky*, 381 F.3d 511, 516 (6th Cir. 2004) (citing *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1133-35 (6th Cir. 1996) and *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994)). If the motion attacks the claim on its face, all allegations of the plaintiff must be considered true. *Id.* If a claim instead attacks the factual basis for jurisdiction, the trial court must weigh the evidence and the plaintiff bears the burden proving that jurisdiction exists. *Id.* Claims of factual defects are far more frequent than facial attacks. *See* Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1350 (3d ed. 2004).

"A *facial* attack on the subject matter jurisdiction alleged by the complaint merely questions the sufficiency of the pleading." *Ohio Nat. Life Ins. Co. v. United States*, 922 F.2d 320 (6th Cir. 1990) (emphasis in original). When reviewing this type of attack, the court must take allegations in the complaint as true and construe the complaint in a light most favorable to the non-moving party. *United States v. A.D. Roe Co., Inc.*, 186 F.3d 717, 721-22 (6th Cir. 1999). As Defendant's motion does not allege insufficiency in comporting with Fed. R. Civ. P. 8(a)(1), a facial attack is not implicated and thus the Court analyzes it as a factual challenge.

With a "factual" challenge under Rule 12(b)(1), courts consider evidence to determine if jurisdiction actually exists. *See Nichols v. Muskingum Coll.*, 318 F.3d 674, 677 (6th Cir. 2003). Unlike a facial attack, there is no presumption of truthfulness on behalf of the non-moving party with a factual attack. *A.D. Roe Co., Inc.*, 186 F.3d at 722. The burden to prove the court has proper jurisdiction falls on the plaintiff. *Golden v. Gorno Bros., Inc.*, 410 F.3d 879, 881 (6th Cir. 2005). When a factual attack raises a controversy as to the facts of the case, the district court must weigh the conflicting evidence to determine whether subject matter does or does not exist. *See Gentek Bldg. Products, Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007). "The Court is free to weigh the evidence and to satisfy itself as to the existence of its power to hear the case." *Jackie S.*, 442 F. Supp. 2d at 512. The Court has wide discretion to allow affidavits, documents, and a limited evidentiary hearing to resolve jurisdictional facts. *See Gentek Bldg. Prods.,* 491 F.3d at 330.

Defendant attached evidence in support of its motion to dismiss. Accordingly, Defendant's motion is construed as a factual attack. *See Bowers v. Wynne*, 615 F.3d 455, 457 (6th Cir. 2010). However, district courts engage in factual inquiry regarding the complaint *only when* the facts necessary to sustain jurisdiction do not implicate the merits of the plaintiff's claim. *See Gentek Bldg. Prods.,* 491 F.3d at 330. Alternatively, if "an attack on subject-matter jurisdiction also implicates an element of the cause of action, then the district court should find that jurisdiction exists and deal with the objection as a direct attack on the merits of the plaintiff's claim." *Id.* (citations omitted) (internal quotation marks omitted). This provides more protection to the plaintiff who is actually facing a challenge to the validity of his or her claim and so the defendant is forced to proceed under Rule 12(b)(6) or Rule 56. *Id.*

**B.      Rule 12(b)(6) Standard**

Federal Rule of Civil Procedure 12(b)(6) permits dismissal of a lawsuit for "failure to state a claim upon which relief can be granted." A Rule 12(b)(6) motion to dismiss is directed solely to the complaint and any exhibits attached to it. *Roth Steel Prods. v. Sharon Steel Corp.*, 705 F.2d 134, 155 (6th Cir. 1983). The merits of the claims set forth in the complaint are not at issue on a motion to dismiss for failure to state a claim. Consequently, a complaint will be dismissed pursuant to Rule 12(b)(6) only if there is no law to support the claims made, or if the facts alleged are insufficient to state a claim, or if on the face of the complaint there is an insurmountable bar to relief. *See Rauch v. Day & Night Mfg. Corp.*, 576 F.2d 697, 702 (6th Cir. 1978). Rule 12(b)(6) must be read in conjunction with Rule 8(a) of the Federal Rules of Civil Procedure, which requires the complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief."

A court, in considering a 12(b)(6) motion to dismiss, must "construe the complaint in the light most favorable to the plaintiff," accepting as true all the plaintiff's factual allegations. *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009). Although in this context all of the factual allegations in the complaint are taken as true, a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Consequently, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

Furthermore, to survive dismissal pursuant to Rule 12(b)(6), a claim must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1950. While a complaint need not contain "detailed factual

7

allegations," its "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Twombly*, 550 U.S. at 555. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Iqbal*, 129 S. Ct. at 1950 (quoting Fed. R. Civ. P. 8(a)(2)). In the final analysis, the task of determining plausibility is "context-specific [and] requires the reviewing court to draw on its judicial experience and common sense." *Id.*

### III. DISCUSSION

**A. Motion to Dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure**

Defendant alleges dismissal under 12(b)(1) is proper because Plaintiff failed to timely file a 29 U.S.C. § 722 action in this Court or, in the alternative, because her claim is barred by the Eleventh Amendment. (Doc. 6, pp. 4, 5).

**1. Failure to file in a timely manner**

Defendant moves to dismiss for lack of subject matter jurisdiction. Defendant contends that Plaintiff's petition was not filed in a timely manner, and it attaches evidence in support of this position, including an affidavit of Ms. Wendell attesting Plaintiff learned at the November 23, 2010 meeting that her ORSC case was closed. (Doc. 6, Exhibit A). Plaintiff asserts that Ms. Wendell lacks personal knowledge of the meeting, as she was not in attendance (Doc. 10, p. 4). However, this argument regarding whether the complaint was timely filed is not an issue of subject matter, but rather an issue that should be decided under Rule 12(b)(6).

When statutory standing and merits questions converge, courts generally assume jurisdiction. *See Moore v. LaFayette Life Ins. Co.*, 458 F.3d 416, 443-44 (6th Cir. 2006). The court assumes the 30-day requirement goes to the merits of Plaintiff's claim since she argues that Defendant's

dismissal denied Plaintiff rights under the Rehabilitation Act of 1973 and 42 U.S.C. § 1983. (Doc. 1, ¶ 11). The date Plaintiff learned of her case closure, and the timeliness of her response, implicates the merits of her claim that the ORSC summarily dismissed her claims and violated her rights (Doc. 1, ¶ 97).

Further, the United States Supreme Court, "in recent decisions, [has] clarified that time prescriptions, however emphatic, are not properly typed jurisdictional." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 510 (2006) (citations omitted) (internal quotation marks omitted). Here, Defendant argues that Plaintiff's claim should be dismissed because she let her thirty days lapse; thus, Defendant's motion is based on time constraints.

The abovementioned reasons, coupled with Defendant's lack of supporting Sixth Circuit case law, leads this Court to assume that subject matter jurisdiction exists for purposes of further analysis.

### 2. The Eleventh Amendment

"The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. As originally drafted, the Eleventh Amendment referred to suits brought against a state by out-of-state foreign citizens. *Jackie S.*, 442 F. Supp. 2d at 513. In 1890, however, the Supreme Court held the amendment barred in-state as well as out-of-state citizens from suing a state. *Hans v. Louisiana*, 134 U.S. 1, 10 S. Ct. 504, 33 L.Ed. 842 (1890). Therefore, the Amendment is a bar to federal court jurisdiction whenever any private citizen attempts to sue a state. *Id.* "[A] federal court cannot direct a state official to conform his or her conduct to state law . . . ." *Cummings v. Husted*, 2011 WL 2375282, at *10 (S.D. Ohio June 8, 2011).

There are three exceptions to Eleventh Amendment immunity, however. A state may waive its protection through consent, Congress may, under certain provisions of the Constitution, abrogate sovereign immunity through statute, and a federal court may enjoin a "state official" from violating federal law. *Jackie S.*, 442 F. Supp. 3d at 514 (citing *Ex parte Young*, 209 U.S. 123 (1908) (holding the Eleventh Amendment does not bar a suit against a state official for prospective injunctive relief)). "[F]ederal court[s] may award an injunction that governs [a state] official's future conduct, but not one that awards retroactive monetary relief." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 102-03 (1984).

This Court has previously determined 29 U.S.C. § 722 does not foreclose an *Ex parte Young* action. *Jackie S.,* 442 F. Supp. 2d at 516. "The Eleventh Amendment does not bar a suit by a private litigant seeking prospective injunctive relief against state officers charged with an ongoing violation of federal law." *Nationwide Life Ins. Co. v. Missouri*, No. 2:06-CV-405, 2007 WL 912548, at *2 (S.D. Ohio Mar. 23, 2007). The Eleventh Amendment does not bar relief that serves directly to bring an end to a present violation of federal law. *Ernst v. Rising*, 427 F.3d 351, 367-68 (6th Cir. 2005). "If the injunctive relief sought by the plaintiff is truly prospective non-monetary relief, sovereign immunity will not bar the suit simply because the state may be required to make *incidental* expenditures in complying with the injunction." *Barton v. Summers*, 293 F.3d 944, 949 (6th Cir. 2002) (citation omitted) (emphasis in original). Further, the Rehabilitation Act allows the possibility that an applicant can sue a state officer directly. *See Jackie S.*, 442 F. Supp. 3d at 517.

Defendant argues that because ORSC is being sued for "damages" for state law claims, it must be dismissed, "specifically those which request monetary damages." (Doc. 6, p. 7). However, the damages Plaintiff prays for are costs and reasonable attorneys' fees. (Doc. 1, p.

10

13). Defendant cites no case law supporting the notion that the Eleventh Amendment bars a party seeking an award of costs or attorneys' fees.

The Court finds the Plaintiff seeks only declaratory and prospective injunctive relief and accordingly the Eleventh Amendment does not bar the claim. The Sixth Circuit has previously held that claims for reinstatement, much like Plaintiff's claim, are prospective in nature and may proceed under *Ex parte Young*. *Catern v. Kent State Univ.*, 282 F.3d 391, 396 (6th Cir. 2002).

Defendant relies on *Ernst v. Rising*, 427 F.3d 351 (6th Cir. 2005), in asserting that Eleventh Amendment immunity applies to any sort of state law action against any agency that is an arm of the state. (Doc. 6, p. 6). Defendant's reliance upon *Ernst* is not particularly compelling, even though the court in that case found the "plaintiffs have litigated [their] case . . . to request for a 'direct monetary award.'" *Id. at 370.* That case, unlike the one at bar, "[did] not involve a mere request for equal welfare benefits that leaves it to the State to determine how to equalize treatment on a going-forward basis." *Id*. The Plaintiff's prayer for relief requests continuing, prospective "welfare" benefits in which any effect on the State treasury would be ancillary.

Supreme Court precedent also weighs against Defendant's unsupported position. *See Hutto v. Finney*, 437 U.S. 678, 695 (1978) ("The Act imposes attorney's fees 'as part of the costs.' Costs have traditionally been awarded without regard for the States' Eleventh Amendment immunity."). *Id.* ("The Court has never viewed the Eleventh Amendment as barring such awards, even in suits between States and individual litigants.").

Finally, Campbell concedes that this Court may not enforce State law claims against Miller. (Doc. 10, p. 11). Notwithstanding Defendant's representations, Plaintiff does not bring State law claims. Accordingly, the Eleventh Amendment does not bar Plaintiff's claims.

For the aforementioned reasons, Defendant's motion to dismiss on 12(b)(1) grounds fails.

**B. Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure**

Now that the Court has found it may exercise jurisdiction over Campbell's claims, it must consider whether Plaintiff states a claim upon which relief can be granted. *Jackie S.*, 442 F. Supp. 2d at 519. Defendant argues that Plaintiff fails to state a claim upon which relief can be granted for the following reasons: (1) the Rehabilitation Act does not provide an express right of action; and (2) the Rehabilitation Act does not provide an implied right of action. As in *Jackie S.*, this Court will address Campbell's claims separately to determine their viability. *Jackie S.*, 442 F. Supp. at 519. Plaintiff argues that the Act does provide for a limited express cause of action and in the alternative, the Court should find that an implied cause of action exists in Plaintiff's narrowly tailored circumstances. (Doc. 10, pp. 12-14). Plaintiff also alleges that her rights to Due Process under the Fourteenth Amendment were violated, and thus she can recover under 42 U.S.C. § 1983. (Doc. 8, pp. 13-20).

   **1. Existence of an Express Cause of Action**

In 1998, Congress changed Title I of the Rehabilitation Act to add 29 U.S.C. § 722(c)(5)(J) to provide relief for individuals contesting the findings of their assigned hearing officer via private civil action. *Jackie S.*, 442 F. Supp. 2d at 522. Plaintiff points to § 722(c)(5)(J) to show the "clear statutory right to judicial review." (Doc. 10, p. 13). Section 722(c)(5)(J) states: "Any party aggrieved by a final [hearing] decision … may bring a civil action for review of such decision." 29 U.S.C. § 722(c)(5)(J).

Defendant correctly notes that the Sixth Circuit has not held that 29 U.S.C. § 722 creates an express private right of action. (Doc. 6, p. 8). The Sixth Circuit has yet to rule on the issue, but other Courts have previously held 29 U.S.C. § 722 does not create an express private right of

action. *Jackie S.*, 442 F. Supp. 2d at 521. *See, e.g.*, *Mallett v. Wisconsin Div. of Vocational Rehab.*, 130 F.3d 1245 (7th Cir. 1997). This Court has also found that § 722 does not create a private cause of action for individuals seeking systemic relief. *See Jackie S.*, 442 F. Supp. 2d at 523.

Plaintiff makes a similar argument as the plaintiffs in *Jackie S*. In sum, the argument is that cases such as *Mallett* were decided before Congress drafted the 1998 amendments and should not be read to limit Plaintiff's ability to recover. *Jackie S.*, 442 F. Supp. 2d at 522. However, as this Court has noted, the cases relied upon have not been overruled since Congress drafted the 1998 amendments. *Id.* Further, since 1998 no court has read Title I of the Rehabilitation Act to create an express cause of action. *Id.*

Additionally, the Supreme Court has previously stated that if Congress expressly provides for another remedy, then a court should not add additional remedies. *Jackie S.*, 442 F. Supp. 2d at 523 (citing *Meghrig v. KFC W., Inc.*, 516 U.S. 479 (1996)). As in *Jackie S.*, finding an express private right of action would overlook Congress' intent to provide a detailed administrative remedial scheme. 442 F. Supp. 2d at 523. Also like *Jackie S.*, there is no basis, in either precedent or statute that warrants such a finding. *Id.* at 524.

Plaintiff argues that no court has dealt directly with the "narrow question" whether to enforce the right to a due process hearing that leads directly to the right of judicial review before this Court. (Doc. 10, p. 13). Like the plaintiffs in *Jackie S.*, however, Plaintiff points to no case law to support its position that there is an express private right of action.

Plaintiff urges a "fair reading." (Doc. 10, p. 14). Plaintiff argues that the Court should read 29 U.S.C. § 722(c)(5) as creating a cause of action when the Defendant has denied the statutory condition precedent, a due process hearing. (Doc. 10, p. 14). However, this is not what the

language of the statute says, and without more textual or precedential support, this Court does not find this to be "expressly" stated. Without an express statement or support in precedent, this Court does not think this would be a "fair reading."

### 2. Existence of an Implied Cause of Action

Because 29 U.S.C. § 722 has not been found to create an *express* cause of action for Plaintiff, the Court must determine whether it creates an *implied* private cause of action. *Jackie S.*, 442 F. Supp. 2d at 523. The Supreme Court has long held that Congress is to create private rights of action. *Touche Ross & Co. v. Redington*, 442 U.S. 560, 578 (1979). The Supreme Court in *Cort v. Ash* developed a four-factor inquiry to determine congressional intent. *See Cort v. Ash*, 422 U.S. 66, 78 (1975). These factors are: (1) whether the plaintiff belongs to the class for which the statute was enacted; (2) the existence of legislative intent to create or deny the remedy; (3) consistency of such remedy with the purpose of the "legislative scheme" and (4) classification of the cause of action as a state matter. *Id.* Subsequently, the Court narrowed *Cort*'s analysis to focus on the second factor-congressional intent to allow private suits. *See Karhalios v. Nat'l Fed'n of Fed. Employees, Local 1263*, 489 U.S. 527, 532 (1989) (" '[T]he ultimate issue is whether Congress intended to create a private cause of action' " (quoting *California v. Sierra Club*, 451 U.S. 287, 293 (1981))). Courts are to examine the statutory text, analyze the purpose of the laws, and canvas relevant legislative history to determine congressional intent. *See Alexander v. Sandoval*, 532 U.S. 275, 288 (2001).

Our analysis in the case *sub judice* closely mirrors that found in *Jackie S.* 442 F. Supp. 2d at 524-25. Like the Supreme Court in *Sandoval*, we begin our search for Congressional intent with "the text and structure" of the title. *See Jackie S.*, 442 F. Supp. 2d at 525; *Sandoval*, 532 U.S. at 288-89. In *Sandoval*, the Court found it clear that "rights-creating" language, which had been so

critical to the Courts' analysis in *Cannon v. University of Chicago*, 441 U.S. 677 (1979), was completely absent from § 602, the statutory section through which the Department passed the regulation in question. *Sandoval*, 532 U.S. at 289. Similarly, this Court has already found § 722 to not contain the "rights-creating" language. *Jackie S.*, 442 F. Supp. 2d at 525. This Court reiterates that § 722 does not contain "rights creating" language.

Despite the plain language of the statute weighing against implying a cause of action, the Court must still consider Congress' justification for drafting the Act. *Jackie S.*, 532 U.S. at 525. As this Court has previously recognized, the broad purpose of the Rehabilitation Act is to empower disabled individuals and to create incentives for Federal and State governments to work cooperatively in promoting empowerment. *See id.* (citing 29 U.S.C. § 701). In *Jackie S.*, this Court noted that nowhere in the statute did Congress imply that individuals could bring claims that states receiving funds pursuant to the Act are violating plaintiff's statutory and/or constitutional rights. *Id*.

Rather, the scheme devised by Congress is "detailed" in allowing parties to pursue administrative, and later civil actions. *See Jackie S.*, 532 F. Supp. 2d at 525. Nowhere in the Act does Congress imply that parties who are barred from the remedial scheme can challenge this decision in a civil action. Rather, the language of § 722(c)(5)(J) supports claims that are based on final agency decisions. It is important to note also that the alternative remedy set up by § 722(c)(5)(J) suggests that Congress meant to preclude other methods of enforcement. *See Sandoval*, 532 U.S. at 288-89.

The Court, without Congressional intent to imply a cause of action for plaintiffs, is foreclosed from reading such action in the language. *See Jackie S.*, 532 F. Supp. 2d at 525.

Accordingly, the Court does not find that a private cause of action can be implied in the Rehabilitation Act.

As this Court recently noted, most courts who have addressed the issue have found that the Rehabilitation Act does not include an express or an implied cause of action outside of an express right to judicial review of a rehabilitation services decision, which was added in 1998. *Johnson v. Rehab. Servs.*, No. 1:10-cv-554, 2011 WL 3102564 at *3 (S.D. Ohio July 25, 2011). Similarly, this Court does not read an express or implied claim in § 722 for Plaintiff.

### 3. Recovery Under 42 U.S.C. § 1983

Title 42 U.S.C. § 1983 creates a cause of action against a person acting under the color of state law that deprives an individual of "'any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Westside Mothers v. Olszewski*, 454 F.3d 532, 536 (6th Cir. 2006). Section 1983 safeguards certain rights conferred by federal statutes as well as rights established by the Constitution. *Hughlett v. Romer-Sensky*, 497 F.3d 557, 561 (2006) (citing *Maine v. Thiboutot*, 448 U.S. 1, 4 (1980)). The plaintiff, however, must assert a violation of a federal *right* and not just a violation of a federal law. *Hughlett*, 497 F.3d at 561 (citing *Blessing v. Freestone*, 520 U.S. 329, 340 (1997)).

#### i. Statutory Right

The Supreme Court in *Gonzaga University v. Doe*, 536 U.S. 273, 287-90 (2002) engaged in a three-part analysis to decide whether a statute created an actionable right. *Hughlett*, 497 F.3d at 562. First, the statute must contain rights-creating language unmistakably focused on the individuals benefitted. *Hughlett*, 497 F.3d at 562 (citing *Gonzaga*, 536 U.S. at 287). Second, the statute must have an individual focus, rather than a system wide or aggregate focus. *Hughlett*, 497 F.3d at 562 (citing *Gonzaga*, 536 U.S. at 288). And finally, the statute must lack an

16

enforcement scheme for aggrieved individuals. *Hughlett*, 497 F.3d at 562 (citing *Gonzaga*, 536 U.S. at 290).

The Supreme Court has stated that unless Congress "speak[s] with a clear voice," and manifests an "unambiguous" intent to create individually enforceable rights, federal funding provisions do not provide a basis for § 1983 enforcement. *Gonzaga*, 536 U.S. at 280 (citation omitted) (internal quotation marks omitted). To recover under § 1983, a plaintiff must assert a violation not of a federal law, but of a federal right. *Id.* at 282 (citation omitted). Further, the Supreme Court recognized that § 1983 provides a remedy to enforce "rights" that are secured by the Constitution, not the broader category of "benefits" or "interests." *Id.* at 283. Accordingly, the Court rejected the notion that implied right of action cases are separate and distinct from § 1983 cases. *Id.* "To the contrary, the former cases should guide the determination whether a statute confers rights enforceable under § 1983." *Id*. Plaintiffs do not have the burden of showing intent to create a private remedy because § 1983 generally supplies a remedy to vindicate rights that are secured by federal laws. *Id*. Once a plaintiff demonstrates the statute confers an individual right, that right is presumptively enforceable through § 1983. *Id.* at 284. "But the initial inquiry-determining whether a statute confers any right at all-is no different from the initial inquiry in an implied right of action case, the express purpose of which is to determine whether or not a statute 'confer[s] rights on a particular class of persons.' " *Id.* at 284-85.

A court's role should not differ from its role in discerning an implied right of action in § 1983 context. *Gonzaga*, 536 U.S. at 285. Where the text and structure of a statute provide no indication that Congress intended to create new individual rights, there is no basis for a private suit whether in § 1983 or an implied right of action. *Id.* at 286.

17

Further, when Congress provides a detailed remedial scheme, it argues against finding a cause of action. *See Gonzaga*, 536 U.S. at 289-90 (the administrative procedures provided by Congress bolstered the position that § 1983 remedy was unwarranted).

"In sum, if Congress wishes to create new rights enforceable under § 1983, it must do so in clear and unambiguous terms-no less and no more than what is required for Congress to create new rights enforceable under an implied private right of action." *Gonzaga*, 536 U.S. at 290.

Plaintiff in the case at bar has failed to demonstrate that the Rehabilitation Act creates an implied right of action. Therefore, Plaintiff is also unable to recover under § 1983. As in *Gonzaga*, § 722 lacks the rights creating language. *See Jackie S*, 442 F. Supp. 2d at 525. Without the important rights creating language, this Court does not find the Rehabilitation Act to create an actionable right for Plaintiff to sustain a § 1983 claim on. Since Campbell has not demonstrated that the statute confers an individual right, she does not have a right enforceable through § 1983. The conclusion that § 722 fails to confer an enforceable right is buttressed by the administrative procedures Congress devised in the statute.

### ii. Procedural Due Process

Plaintiff argues that she is entitled to recovery under 42 U.S.C. § 1983 for denial of her procedural due process rights. (Doc. 8, p. 13).

There is a two-step inquiry to determine whether Plaintiff's procedural due process rights have been violated. *Lee v. City of Columbus*, 2009 WL 2940195, at *5 (S.D. Ohio Sept. 3, 2009) (citations omitted). First, it must determine whether the plaintiff has a property interest entitled to due process protection. *Id.* (citations omitted). If it is determined that she had such a due process protection, the court must then determine what process is due. *Id.* (citations omitted).

The procedural component of the Due Process Clause does not protect everything that might be described as a government "benefit." *Jackie S.,* 2007 WL 2323486, at *8, (citing *Town of Castle Rock, Colo. v. Gonzales*, 545 U.S. 748, 748 (2005)). Rather, a person must have a "legitimate claim" of entitlement for a person to have a property interest in a benefit. *Id.* A notice and hearing is only necessary under the Due Process Clause if a plaintiff's life, liberty, or property, is hindered. *Id.* (citing *United States v. Salerno*, 481 U.S. 739, 746 (1987)).

Plaintiff does not allege a violation of a property right. As this Court has previously stated, nothing in the Rehabilitation Act or Ohio Administrative Code § 3304-2-58 suggest that handicapped persons have an entitlement to receive funds for vocational training. *Jackie S.,* 2007 WL 2323486, at *8. In this regard, 29 U.S.C. § 722(a)(3)(B) states: "Nothing in this paragraph shall be construed to create an entitlement to any vocational rehabilitation service." Accordingly, Plaintiff does not allege a violation of a property interest and thus does not satisfy the first prong of the analysis.[5] In sum, the Court concludes that Plaintiff fails to state a claim for violation of her procedural due process rights.

**IV.**

---

[5] Plaintiff's counsel should be aware of this as they also represented the plaintiff in *Jackie S. v. Connelly*, 2:05-CV-755, 2007 WL 2323486 (S.D. Ohio Aug. 9, 2007).

## V. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant Ohio Rehabilitation Services Commission's Motion to Dismiss (Doc. 6).

Further, after concluding that Plaintiff fails to state a claim upon which relief can be granted, the Court finds that Plaintiff's Motion for Temporary Restraining Order and/or Preliminary Injunction (Doc. 8) is now **MOOT**.

The Clerk shall remove Documents 6 and 8 from the Court's pending motions list.

**IT IS SO ORDERED.**

*/s/ George C. Smith*
**GEORGE C. SMITH, JUDGE**
**UNITED STATES DISTRICT COURT**